IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) ) |
| SUKHDARSHAN S. BEDI, ILLINOIS HEALTHCARE CLINIC, P.C. d/b/a MARION FAMILY HEALTH CARE, M-CFHC, INC. d/b/a HARRISBURG FAMILY HEALTHCARE, and GALATIA MEDICAL CENTER CORP., | ) ) ) ) ) ) ) ) ) |
|     Defendants. | ) ) |

NO. 09-CV-616-WDS

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

    This matter is before the Court on plaintiff United States of America's motion for summary judgment (Doc. 17). Defendant Sukhdarshan S. Bedi has responded (Docs. 33 & 34), but defendants Illinois Healthcare Clinic, P.C. d/b/a Marion Family Health Care; M-CFHC, Inc. d/b/a Harrisburg Family Healthcare; and Galatia Medical Center Corporation have not. In this action, plaintiff seeks civil damages from defendants under the False Claims Act (31 U.S.C. § 3729) and the Controlled Substances Act (21 U.S.C. § 829), as well as for common-law fraud, breach of contract, unjust enrichment, and payment by mistake (Doc. 2). After the complaint was filed in this action, defendants were indicted and pled guilty before this Court in *United States v. Bedi et al.*, Case No. 9-CR-40048-JPG, for the same conduct giving rise to this action.

**I. BACKGROUND**

    Defendant Sukhdarshan S. Bedi, M.D., owned or operated three medical clinics in Southern Illinois, including defendants Illinois Family Healthcare, P.C. d/b/a Marion Family Health Care; M-CFHC, Inc. d/b/a Harrisburg Family Healthcare; and Galatia Medical Center Corporation (the

"Clinics"). The three Clinics were enrolled in the Illinois Medical Assistance Program and designated as rural health clinics by the Illinois Department of Healthcare and Family Services. Based on this designation, the Clinics were authorized to provide general medical services to Medicaid recipients in areas deemed to be medically underserved.

On or about June 24, 2007, Bedi prescribed 60 pills of Methadone to Donald Singleton in exchange for construction work at Bedi's home. Bedi was charged, in Count 6 of the Government's Superseding Indictment, with knowingly dispensing and causing to be distributed a prescription for a Schedule II controlled substance not in the usual course of professional practice (Doc. 67, Case No. 9-CR-40048-JPG). *See* 21 U.S.C. § 841(a)(1).[1] The Government dismissed Counts 4, 5, and 7–12 as to Bedi. Count 12 had accused him of healthcare fraud against the Medicaid program (Doc. 22, Case No. 9-CR-40048-JPG).

Bedi entered an open plea of guilty. His plea agreement stated: "It is further understood that this Agreement to Plead Guilty does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil proceedings directly or indirectly involving the Defendant" (Doc. 66, ¶ 3, Case No. 9-CR-40048-JPG). Bedi acknowledged "that there is a parallel civil proceeding against him and that this open plea has no effect on that proceeding" (*id.*, ¶ 8). He agreed to pay $47,784.31 in criminal restitution to Medicaid.

The Clinics were also indicted in the criminal case (Doc. 69, Case No. 9-CR-40048-JPG). They pled guilty to Count 7, conspiracy to illegally dispense controlled substances in violation of 21 U.S.C. § 846; and to Count 12, healthcare fraud against the Medicaid program in violation of 18 U.S.C. § 1347 (*id.*). They agreed to pay criminal restitution of $47,748.31 to Medicaid, for which they would be jointly and severally liable with Bedi.

Under Count 7, the Clinics stipulated that their two mid-level practitioners, Randy Doty and Mohamed Elsamahi, knowingly dispensed by prescription, and caused to be distributed, Schedule II controlled substances that they were not authorized to dispense using pre-signed blank

---

[1] Bedi's other charges are not relevant here.

2

prescriptions given to them by Bedi (Doc. 70, Case No. 9-CR-40048-JPG). Those prescriptions caused $47,748.31 in unauthorized prescription claims to be paid by the Illinois Department of Healthcare and Family Services, a healthcare benefit program (Medicaid) (*id.*).

Under Count 12, the Clinics stipulated that they had submitted claims to Medicaid for noncovered services, both for "medically unreasonable and unnecessary prescription controlled substances and for medically unreasonable and unnecessary visits claimed as rural health encounters" (*id.*). In addition, the Clinics agreed that their practitioners Doty and Elsamahi had "knowingly and intentionally dispensed by prescription, and caused to be distributed, Schedule II controlled substances to Medicaid eligible patients that they were not authorized to dispense" (*id.*).

This matter is the parallel civil proceeding against Bedi and the Clinics. Plaintiff United States of America, on behalf of the United States Department of Health and Human Services, brings seven counts pursuant to the False Claims Act (31 U.S.C. § 3729), the Controlled Substances Act (21 U.S.C. § 829(a)), and other common-law theories. Plaintiff seeks compensatory damages, civil penalties, certain equitable remedies, and attorney's fees and costs.

## II. DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Int'l Union v. ZF Boge Elastmetall LLC*, 649 F.3d 641, 646 (7th Cir. 2011). All facts and inferences are to be drawn in favor of the nonmoving party. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006). However, this does not include "[i]nferences which are supported only by speculation or conjecture." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). Therefore, the nonmoving party must "do more than raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing that there is some genuine issue for trial." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006) (citations omitted) (quoted in *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir.

2008)). A genuine issue of material fact exists "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Argyropoulos*, 539 F.3d at 732 (quoting *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007)).

### III. ANALYSIS

**Failure to Respond to the Motion for Summary Judgment**

These proceedings were stayed during the pendency of the criminal case, November 2009 through September 2010, after which the stay was lifted. Plaintiff filed the instant motion for summary judgment on November 17, 2010 (Doc. 17).

To date, the Clinics have not responded, notwithstanding that they were represented in the criminal case by Gilbert C. Sison, who currently represents, and has filed a response in this case on behalf of, defendant Bedi. After the motion for summary judgment was filed, plaintiff filed a notice directed to pro se defendants to warn them of the consequences of failing to respond (Doc. 19). The Court then issued an Order on April 15, 2011, directing defendants to show cause within ten days why judgment should not be entered in plaintiff's favor (Doc. 30). Only Bedi responded to the show-cause order, and the Court granted him additional time to file a response, which he did on May 20, 2011 (Docs. 33 & 34).

On a motion for summary judgment, if a party fails to address another party's assertion of fact, the Court may:

> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). Similarly, this Court's local rules provide that "failure to timely file an answering brief to a motion may, in the court's discretion, be considered an admission of the merits of the motion." SDIL-LR 7.1(c). The Court therefore will consider the Clinics' failure to respond an admission of the merits of plaintiff's motion. In accordance with Rule 56(e), the Court will grant the motion if it shows that plaintiff is entitled to it. *See also* Fed. R. Civ. P. 56 ("The

court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and the movant is entitled to judgment as a matter of law*." (emphasis added)).

**Count 1: False Claims Act Liability for Healthcare Fraud**

Plaintiff alleges that the defendants are liable under the False Claims Act (FCA), 31 U.S.C. § 3729, for knowingly presenting claims to Medicaid for the payment of prescriptions in violation of the Controlled Substances Act (CSA). Plaintiff submits that defendants caused about 400 such claims to be presented to Medicaid (Doc. 18, Exs. A-1, A-2, A-3).

There are three essential elements of the FCA. A plaintiff must show (1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false. *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853, 856 (7th Cir. 2006) (citing *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005)).

Plaintiff argues that it is clear from the federal and state laws that the mid-level practitioners Doty and Elsamahi were not authorized to prescribe Schedule II controlled substances and that the prescriptions they dispensed were "ineffective and nonconforming," which the Court interprets to mean were not covered by Medicaid.[2] The CSA provides that it is unlawful for any person to distribute or dispense a Schedule II controlled substance without the written prescription of a practitioner. 21 U.S.C. §§ 829(a), 842(a). A "practitioner" is defined as a physician or other person who is licensed, registered, or otherwise permitted by the United States or the jurisdiction where he practices to distribute, dispense, or administer a controlled substance in the course of professional practice or research. § 802(21). In this jurisdiction, Illinois, one who issues a Schedule II controlled substance must be a prescriber who:

> a) Possesses a valid professional license issued by the Illinois Department of Financial and Professional Regulation as a physician licensed to practice medicine in all of its branches,

---

[2] Plaintiff refers to Count 12, in which the Clinics admit that the practitioners' prescriptions were "for non-covered services, both medically unreasonable and unnecessary prescription controlled substances . . ." (Doc. 70, ¶ 4, Case No. 9-CR-40048-JPG).

>    dentist, optometrist, podiatrist, veterinarian, nurse practitioner, physician assistant or other licensed prescriber of another state or jurisdiction; and
>    b) Is licensed to prescribe Schedule II, III, IV and V drugs by the State of Illinois or any state; and
>    c) Must be registered by the United States Drug Enforcement Administration (DEA) to prescribe Schedule II, III, IV and V drugs.

77 IL ADC 2080.50.

Merely from the laws cited, it is not clear that Doty and Elsamahi were not authorized. But in Count 12 of the criminal case, the Clinics pled guilty to healthcare fraud against Medicaid in violation of 18 U.S.C. § 1347. Thus, they admitted to knowingly and willfully executing a scheme to (1) "defraud any health care benefit program" or (2) "obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by . . . any health care benefit program," in connection with the delivery of or payment for healthcare benefits, items, or services. § 1347(a).[3]

The Clinics' guilty plea meets the three elements of the FCA. The Clinics (1) made statements, in the form of claims, to receive money from the government, *i.e.*, Medicaid benefits; (2) admitted the statements were false (false representation is an element of healthcare fraud under § 1347(2)); and (3) knew the statements were false (knowledge is also an element of healthcare fraud). Accordingly, the Court **GRANTS** plaintiff's motion for summary judgment on Count 1 against the Clinics.

Plaintiff does not offer any facts specifically relating to Bedi, however. The entire argument focuses on the Clinics' guilty plea to healthcare fraud. Yet the Government dismissed its healthcare-fraud charge against Bedi. Plaintiff includes an affidavit from Kenneth W. Wells II, a special agent in the Department of Health and Human Services (Doc. 18, Ex. B). Wells states

---

[3] A criminal conviction based on a guilty plea "conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he ws convicted." *Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977) (citing *Plunkett v. Comm'r of Internal Revenue*, 465 F.2d 229, 305–07 (7th Cir. 1972)); *accord Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Ill. Nat'l Bank and Trust Co.*, 858 F.2d 1264, 1271 (7th Cir. 1988).

that Bedi provided pre-signed blank prescriptions to Doty and Elsamahi, and that "nonconforming prescriptions were presented." But, by whom were the prescriptions presented? These facts do not show that Bedi himself knowingly submitted false statements in the form of claims to Medicaid. It is plaintiff's burden on summary judgment to show that it is entitled to judgment as a matter of law. Count I as to Bedi is **DENIED**.

Bedi raises a number of arguments in his response explaining why he is not liable. He believes the Clinics' guilty plea does not apply to him via collateral estoppel. He disputes that his agreement to joint and several liability with the Clinics for the criminal restitution was a tacit admission to healthcare fraud. He observes that a failure to comply with statutes and regulations does not by itself establish a violation of the FCA. And he asserts that Doty and Elsamahi's prescriptions were not medically unnecessary, so he cannot be liable as their supervisor for any FCA violations. The Court does not find any of these defenses necessary because plaintiff did not address Bedi to begin with.

**Count 2: False Claims Act Liability for Treatment of Mental-Health Issues**

Plaintiff alleges that Bedi established a behavioral-health unit staffed by Elsamahi and that, under Bedi's supervision, Elsamahi was treating patients for mental-health issues outside the scope of his professional license (Doc. 18, Ex. B). Plaintiff includes an exhibit showing over 1,000 patient visits for a total amount of $85,150.37 in services (Doc. 18, Ex. C). Plaintiff avers that the Centers for Medicare and Medicaid Services have rules and regulations for providing healthcare services to rural and underserved areas, and that only qualified health providers may offer services. Plaintiff alleges that neither Bedi nor Elsamahi was qualified to provide psychiatric health services.[4] As plaintiff notes, defendants admitted in their guilty plea to Count 12 that they submitted claims to Medicaid for noncovered services, including medically unreasonable and unnecessary visits claimed as rural health encounters (Doc. 70, Case No. 9-CR-40048-JPG).

The Court agrees that the elements of liability under the FCA are met with respect to the

---

[4] Elsamahi, as a physician's assistant, must operate within the scope of practice of the supervising physician, Bedi.

Clinics. Count 12 of the Clinics' plea agreement shows that (1) they made statements, in the form of claims, to receive money from the government, *i.e.*, Medicaid benefits, (2) the statements were false because the claims were for noncovered services, and (3) the Clinics admitted to knowing the claims were for noncovered services.

Plaintiff again does not allege any facts that would show Bedi to be liable under the FCA for knowingly submitting false or noncovered-services claims to Medicaid. Plaintiff relies entirely on Count 12 in the criminal matter, to which only the Clinics pled guilty. In addition, Bedi notes that Elsamahi sought guidance from regulatory authorities and from other practitioners to ensure that it was permissible for him to offer behavioral-health services under Bedi's supervision (Doc. 33, Ex. 2, 138–50). This creates a genuine dispute as to whether Bedi knew the claims were for noncovered services. Therefore, plaintiff's motion for summary judgment on Count 2 is **GRANTED** against the Clinics but **DENIED** as to Bedi.

**Count 3: Violations of Controlled Substances Act**

Plaintiff alleges in Count 3 that defendants violated the Controlled Substances Act (CSA) by knowingly dispensing ineffective and nonconforming prescriptions for Schedule II controlled substances. Specifically, plaintiff seems to argue that Doty and Elsamahi were not authorized to dispense the prescriptions, Bedi supervised them and provided them with pre-signed prescription pads, and therefore Bedi is liable under the CSA for dispensing prescriptions outside the course of professional practice.

Bedi, as a physician, was legally authorized to prescribe Schedule II controlled substances to patients. A physician can, however, be prosecuted for violating the CSA, 21 U.S.C. § 841(a)(1), if he writes a prescription "outside the course of professional practice" and without "a legitimate medical purpose." *United States v. Chube II*, 538 F.3d 693, 697 (7th Cir. 2008); *accord* 21 C.F.R. § 1306.04; *United States v. Bek*, 493 F.3d 790, 798 (7th Cir. 2007); *see also United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006) ("[T]he jury must make a finding of intent not merely with respect to distribution, but also with respect to the doctor's intent to act

as a pusher rather than a medical professional."). As discussed above, under Count 1, the CSA and State of Illinois require practitioners who prescribe Schedule II controlled substances to be licensed by Illinois and registered with the DEA.

Plaintiff cites the above criminal laws and standard, but has not shown that a civil cause of action exists under the CSA. *Cf. United States v. Alerre*, 430 F.3d 681, 689–90 (4th Cir. 2005) (distinguishing the criminal standard under the CSA from the civil standard under medical-malpractice law). Consequently, the Court **FINDS** that plaintiff has not shown it is entitled to judgment as a matter of law.

Moreover, as best the Court can discern, plaintiff is suggesting that Bedi is liable under the CSA because Doty and Elsamahi were not authorized to dispense Schedule II controlled substances. So, the argument goes, it was outside the course of professional practice for Bedi to provide them with pre-signed prescription pads.[5] Bedi responds, however, that plaintiff conceded in the criminal case that neither Doty nor Elsamahi prescribed medically unnecessary controlled substances to patients (Doc. 33, Ex. 5, ¶ 16). In fact, the United States objected to Bedi's presentence report because:

> [T]he prescriptions provided by both mid-level practitioners were done so [*sic*] in good faith and through the use of good professional judgment in assessing their patients' medical needs. As such, Bedi cannot be held liable in a supervisory position where the prescriptions issued by his mid-level practitioners have a legitimate medical purpose.

(*id.*). In addition, Bedi's wife and office manager, Virender Bedi, attests that she and Bedi had researched whether Bedi could provide pre-signed prescription pads to Doty and Elsamahi. They decided that the prescription pads should be kept in a locked cabinet and only used in emergency and maintenance-therapy situations (Doc. 33, Ex. 1, ¶¶ 11, 12). These facts do not suggest Bedi was acting as a pusher rather than a medical professional; it was not clearly outside the course of

---

[5] Bedi admitted, in his guilty plea in Count 6 of the criminal case, that the prescription he issued to Singleton was outside the course of professional practice (Doc. 66, Case No. 9-CR-40048-JPG). Plaintiff has not explained how that admission relates to Count 3 here, however.

9

his professional practice or without a legitimate medical purpose when Bedi provided Doty and Elsamahi with pre-signed prescriptions.

Plaintiff does not address the Clinics directly. In the criminal case, the Clinics admitted to a conspiracy, under 21 U.S.C. § 846, for the unauthorized prescriptions dispensed by Doty and Elsamahi (Doc. 69, Case No. 9-CR-40048).[6] They also stipulated that Doty and Elsamahi's prescriptions were medically unreasonable and unnecessary. Yet plaintiff applies the standard of liability for physicians without saying whether the same standard would apply to a physician's employer. And the Clinics did not themselves admit to the unauthorized dispensing of controlled substances, only to conspiracy.

The Court **FINDS** that plaintiff has not shown the existence of a civil cause of action in Count 3. Further, Bedi has demonstrated a genuine dispute as to material facts, and the Clinics' guilty plea to conspiracy does not establish their direct liability here. Plaintiff's motion for summary judgment on Count 3 is, accordingly, **DENIED**.

**Count 4: Common-Law Fraud**

Plaintiff next argues that defendants' guilty pleas show they are liable for fraud. The Clinics admitted to submitting claims to Medicaid for noncovered services, which were for medically unreasonable and unnecessary prescription controlled substances and visits claimed as rural health encounters (Doc. 70, Case No. 9-CR-40048-JPG). In all, they caused about $47,784.31 in unauthorized prescription claims to be paid by the Illinois Department of Healthcare and Family Services, or Medicaid. Here, again, plaintiff does not directly address Bedi, only the Clinics.[7]

Under Illinois law, fraud must be established by clear and convincing evidence. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881 (7th Cir. 2005). To prove fraud, the plaintiff must establish

---

[6] Section 846 provides that "[a]ny person who . . . conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy."

[7] Plaintiff states, for example, "Thus, by having previously pled guilty to illegal dispensation of a controlled substance and health care fraud, and agreeing to make criminal restitution to Medicaid . . . defendants recognized that they caused the Medicaid program to pay for services and claims that it should not have . . ." (Doc. 18, p. 15). Only the Clinics pled guilty to healthcare fraud.

"(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Id.* at 882 (quoting *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558 (Ill. App. Ct. 2003)). The final element is not at issue here because the Clinics admitted to causing $47,784.31 in unauthorized prescription claims.

Under the first element, the Clinics admitted to submitting false statements, in the form of nonconforming claims, to Medicaid. A statement is material if the plaintiff would have acted differently knowing the information, or if it concerned the type of information on which the plaintiff would be expected to rely, in making the decision to act. *See Wernikoff v. Health Care Serv. Corp.*, 877 N.E.2d 11, 16 (Ill. App. Ct. 2007).[8] Plaintiff asserts that defendants' claims were material because providers who enroll in the Medicaid program agree to submit claims only for "medically and reasonably necessary services" covered under the program. The Court cannot verify these assertions because plaintiff does not provide any evidence of the provider agreements or the terms of those agreements. *See* Fed. R. Civ. P. 56(c)(1). Nonetheless, the Clinics submitted claims for "noncovered services," which by definition suggests that Medicaid would have acted differently had it known that information.

The second element of fraud is met because the Clinics knew their statements were false, having admitted to healthcare fraud in Count 12. Similarly, the third element, that the Clinics' intended to induce Medicaid to act, is met by their admissions that they knowingly and willfully engaged in "a scheme to defraud a health care benefit program."

To satisfy the fourth element, plaintiff must show that Medicaid relied on the truth of the Clinics' statements. Plaintiff alleges that Medicaid did so rely, as evidenced by its continued payments. Yet reliance requires not only that the plaintiff relied on the statements, but that it was

---

[8] Plaintiff cites a definition of "material" from federal law; namely, a "statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)).

justified in doing so. *Davis*, 396 F.3d at 882. And whether the plaintiff was justified in doing so is a fact-specific question. *James v. Lifeline Mobile Medics*, 792 N.E.2d 461, 465 (Ill. App. Ct. 2003). Here, the Court cannot conclude that continued payments is evidence by itself of justified reliance. This is a fact-specific question, and not many facts have been presented. The Court therefore does not **FIND** that justified reliance has been shown, where the burden is on plaintiff to establish fraud by clear and convincing evidence.

Plaintiff has not provided enough evidence to meet all the elements of fraud. The motion for summary judgment on Count 4 is, accordingly, **DENIED**.

**Count 5: Breach of Contract**

In Count 5, plaintiff alleges that defendants entered into a valid and enforceable agreement when they enrolled in the Illinois Medical Assistance Program and were designated as rural health providers. Plaintiff adds that, as part of their contract, defendants agreed to submit claims for only medically and reasonably necessary services. Further, the United States is a party because the Department of Health and Human Services administers Medicaid on the federal level and reimburses approximately half of Illinois' costs. Thus, plaintiff suggests that defendants breached their contract with the federal and state Medicaid program by violating the rules of the program. Plaintiff claims damages of $113,461.66 from over 400 nonconforming prescriptions issued by defendants and over 1,000 false claims presented to Medicaid (Doc. 18, Exs. A-1, A-2, A-3, C).

Plaintiff has not met its burden of proof on Count 5, however. For example, plaintiff does not submit the terms of any agreement. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Plaintiff also does not cite any legal authority other than the elements of breach of contract in Illinois. Bedi responds that the Clinics, or providers, entered into an agreement with the State of Illinois, not the federal government. He says the federal government is not the proper party to

bring this claim. He does not cite authority either, however.

The Court **FINDS** that plaintiff has not met its burden on a motion for summary judgment to show that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Accordingly, Count 5 of the motion for summary judgment is **DENIED**.

**Count 6: Unjust Enrichment from False Claims Submitted to Medicaid**

Plaintiff believes the same facts that support liability under the False Claims Act support liability for unjust enrichment. Under Illinois law, unjust enrichment consists of (1) the defendant receiving a benefit, (2) to the plaintiff's detriment, (3) where the defendant's retention of the benefit would be unjust. *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998). "[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

The Clinics admitted to healthcare fraud of the Medicaid program in Count 12; *i.e.*, they engaged in a scheme to defraud Medicaid in exchange for healthcare benefits and services (Doc. 69, Case No. 9-CR-40048-JPG). *See* 18 U.S.C. § 1347. So, the Clinics received a benefit and it was to plaintiff's detriment. Having committed a scheme to defraud Medicaid, the Clinics' retention of the benefits they received would be unjust. The Court therefore **GRANTS** plaintiff's motion for summary judgment on Count 6 in favor of plaintiff and against the Clinics. But, no facts were alleged that Bedi himself received a benefit to plaintiff's detriment or that his retention of anything would be unjust, and Count 6 is therefore **DENIED** as to Bedi.

**Count 7: Payment by Mistake**

As its final claim, presumably, if all else fails, plaintiff says it is entitled to recover money that the United States paid to defendants by mistake. It is a remedy available to the United States independent of statute. *United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970); *United States*

*v. Wurts*, 303 U.S. 414, 415 (1938). Thus, the United States can recover funds that its agents have wrongfully, erroneously, or illegally paid. *Mead*, 426, F.2d at 124 (quoting *Kingman Water Co. v. United States*, 253 F.2d 588, 590 (9th Cir. 1958)). The Seventh Circuit has explained that the ground for the mistake-of-fact theory is unjust enrichment—because the recipient of the money has no right to retain money paid to him by mistake. *United States v. Frontone*, 383 F.3d 656, 660–61 (7th Cir. 2004). Thus the Court finds that this claim duplicates the unjust-enrichment claim in Count 6. Plaintiff's agents erroneously paid the Clinics certain healthcare benefits as a result of the Clinics' scheme to defraud Medicaid. Plaintiff is entitled to recover the funds it erroneously paid. The motion for summary judgment on Count 7 is **GRANTED** in favor of plaintiff and against the Clinics. No facts were alleged here against Bedi, so, as to him, Count 7 is **DENIED**.

## IV. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS IN PART AND DENIES IN PART** plaintiff's motion for summary judgment (Doc. 17). The motion is **GRANTED** as to Counts 1, 2, 6, and 7, and judgment is entered in favor of plaintiff and against the Clinics. The motion is **DENIED** as to all remaining counts against the Clinics, and **DENIED** on all counts as to Bedi.

    **IT IS SO ORDERED.**

    **DATED:  October 18, 2011**

                                            **/s/ WILLIAM D. STIEHL**
                                               **DISTRICT JUDGE**